IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-02748-PAB-TPO

MERCER GLOBAL ADVISORS, INC.,

    Plaintiff and Counterclaim Defendant,

v.

ACG WEALTH, INC., a Georgia corporation,
JEFFREY SHAVER, an individual,
JOSEPH YOUNG, an individual, and
DAVID MILLICAN, an individual,

    Defendants and Counterclaim Plaintiffs.

---

# ORDER

---

This matter comes before the Court on Plaintiff and Counter-Defendant Mercer Global Advisors, Inc.'s Renewed Motion to Dismiss [Docket No. 75]. Mercer Global Advisors, Inc. ("Mercer") moves to dismiss defendants and counterclaim plaintiffs Jeffrey Shaver and Joseph Young's fifth counterclaim for defamation. Docket No. 75 at 1. On August 12, 2024, Mr. Shaver and Mr. Young filed a response. Docket No. 80. On August 26, 2024, Mercer filed a reply. Docket No. 81. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I.   **BACKGROUND**[1]

ACG Wealth, Inc. ("ACG") is an investment advisory firm that provides wealth planning and management services to its clients. Docket No. 69 at 13, ¶ 9. ACG Holdings, Inc., of which Mr. Shaver, Mr. Young, and David Millican are the principals, wholly owns ACG. *Id*., ¶ 10. In 2021, Mercer and ACG entered into an Asset Purchase Agreement (the "APA"). *Id*., ¶ 11. Pursuant to the APA, Mercer purchased "substantially all" of ACG's assets, business, and operations relating to ACG's financial advisory services. *Id*. at 13–14, ¶ 12. Furthermore, Mercer agreed to hired Mr. Shaver and Mr. Young. *Id*. at 20, ¶ 35.

Mercer, Mr. Shaver, and Mr. Young entered into an employment agreement providing that Mercer would employ Mr. Shaver and Mr. Young for two years, beginning October 30, 2021, and would continue such employment for a period of two years thereafter. *Id*., ¶ 36. Mr. Shaver and Mr. Young began their employment on October 31, 2021. *Id.*, ¶ 35. Section 1.3.1 of Mr. Shaver's and Mr. Young's employment agreements provided that, "[i]n the event Employer terminates this Agreement without Cause . . . Employee shall be entitled to a severance benefit equal to the amount of his base salary that would otherwise have been payable through the remainder of the Term ("Severance Benefit") as if the Agreement had not been terminated by Employer." *Id.*, ¶ 37. On March 31, 2023, Mercer terminated Mr. Shaver and Mr. Young. *Id.*, ¶ 38. Mercer asserted that Mr. Shaver and Mr. Young were terminated "with cause," which

---

[1] The facts below are taken from defendants' counterclaim, Docket No. 69, and are presumed to be true, unless otherwise noted, for purposes of ruling on Mercer's motion to dismiss.

was false.  *Id*. at 20, 25, ¶¶ 39, 74.  Mercer refused to pay Mr. Shaver and Mr. Young their respective Severance Benefits, each in the principal amount of $175,000 for a total of $350,000.  *Id.* at 21, ¶ 41.  Mercer has done so maliciously, without merit or justification, in violation of the employment agreements.  *Id.*

Mercer "published and publicized to third parties" that it terminated Mr. Shaver and Mr. Young "with cause."  *Id*., ¶ 43.  Specifically, Mercer "communicated with members of the investment and investment advisory industry news outlets," stating that Mr. Shaver and Mr. Young were terminated "with cause."  *Id*.  Mercer did so to ensure that "this misinformation would be circulated and widely disseminated in the investment and investment advisory industry and would thereby injure and cause damages to Shaver and Young and their professional reputations."  *Id.*

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to

3

accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### III.  ANALYSIS

Mr. Shaver and Mr. Young bring a counterclaim for defamation against Mercer for Mercer's statement that Mercer terminated Mr. Shaver and Mr. Young with cause. Docket No. 69 at 25–26, ¶¶ 73–79. Because the Court has diversity jurisdiction under 28 U.S.C. § 1332, the Court will apply Colorado law to Mr. Shaver and Mr. Young's defamation claim.[2]  *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 138 F.

---

[2] The parties agree that Colorado law applies to Mr. Shaver and Mr. Young's defamation claim. *See* Docket No. 75 at 10 n.2; Docket No. 80 at 7–8 n.5.

Supp. 3d 1191, 1197 (D. Colo. 2015).  To state a claim for defamation, a plaintiff must allege the existence of "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication." *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983) (applying Colorado law).  Mercer's motion to dismiss turns on the first element: whether its alleged statement that Mr. Shaver and Mr. Young were terminated with cause is defamatory.  *See* Docket No. 75 at 9–12.

Defamation as a general matter "is a communication that holds an individual up to contempt or ridicule thereby causing him to incur injury or damage." *Koehane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994).  Defamation can either be written, in which case it is libel, or oral, in which case it is slander.  *Walters,* 559 F. Supp. at 1234.  A defamatory statement may be defamation per se or defamation per quod.  *Inter–State Detective Bur., Inc. v. Denver Post, Inc.*, 484 P.2d 131, 133 (Colo. App. 1971).  "The distinction between libel per se and libel per quod is that to be libel per se the libel must carry its defamatory imputation on its face and is actionable without an allegation or proof of damages; but any libel which does not carry such imputation on its face is libel per quod and is actionable only where special damages are pleaded and proved." *Id*. (citing *Bernstein v. Dun & Bradstreet, Inc.*, 368 P.2d 780, 782 (Colo. App. 1962)).  In order to establish a defamation per quod claim, specific, quantifiable monetary losses must be pled.  *Bernstein*, 368 P.2d at 782.  Because Mr. Shaver's and Mr. Young's sole argument in opposing Mercer's motion to dismiss is that Mercer's statement is

5

defamatory per se, see Docket No. 80 at 7–12, the Court will only consider whether Mercer's statement is defamatory per se and not defamatory per quod. *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

For a statement to be defamation per se it "must be (1) on its face and without extrinsic proof, unmistakably recognized as injurious (defamatory meaning) and (2) specifically directed at the plaintiff (identity)." *Gordon v. Boyles*, 99 P.3d 75, 78–79 (Colo. App. 2004) (citing *Lininger v. Knight*, 226 P.2d 809, 813 (Colo. 1951)). Categories of statements that have been recognized as defamation per se include the imputation of "(a) a criminal offense . . . [;] (b) a loathsome disease . . . [;] (c) [a] matter incompatible with his business, trade, profession, or office . . . [; or] (d) serious sexual misconduct." *Denver Publ'g Co. v. Bueno*, 54 P.3d 893, 899 n.9 (Colo. 2002) (citation omitted). Whether a statement is defamatory per se is a legal question to be determined as a matter of law by the court. *Inter-State Detective Bureau, Inc.*, 484 P.2d at 133.

Mercer argues the statement that Mr. Shaver and Mr. Young were terminated with cause is not a statement that falls into a category considered defamation per se. Docket No. 75 at 11. Specifically, Mercer argues that there is "no indication from the statement that Young or Shaver are incapable of performing their profession." *Id*. at 12. Mercer contends that the statement that an employee was terminated with cause is not necessarily defamatory because "'cause' could arise through the failure to meet a range of different requirements, some of which may be injurious, and others which may be

6

perceived as irrelevant because they are idiosyncratic to the employment relationship at issue." *Id*. at 11.

Mr. Shaver and Mr. Young respond that Mercer's statement is "incompatible with Young and Shaver's business, trade, profession, or office." Docket No. 80 at 9. They contend that "on its face, Mercer's statements charged that Shaver and Young failed to perform their roles with Mercer adequately and disparaged Shaver's and Young's professional ability." *Id*. Because Mercer "made the statements without signaling the facts or circumstances surrounding Shaver's and Young's terminations," Mr. Shaver and Mr. Young claim that Mercer's statement "inherently connotes that Shaver and Young engaged in some type of professional misconduct or wrongdoing to result in their discharge 'with cause.'" *Id*. at 10. Mr. Shaver and Mr. Young argue that the definition of "cause" in their employment contracts shows that Mercer's statements that they were fired with cause are defamation per se. *Id*. at 3-4.

A statement is "defamatory *per se* if it accuses the subject, *inter alia,* of . . . engaging in conduct incompatible with his business, trade, profession, or office." *Nagim v. Douglas*, No. 11-cv-02917-BNB, 2012 WL 113433, at *3 (D. Colo. Jan. 13, 2012) (applying Colorado law) (internal quotation and citation omitted). Under Colorado law, courts generally find a statement is unmistakably injurious to a plaintiff's professional skill and reputation when the statement identifies the specific conduct that resulted in the termination of the plaintiff. *See, e.g., Meehan v. Amax Oil & Gas, Inc.*, 796 F. Supp. 461, 466 (D. Colo. 1992) (finding that the statement the plaintiff did a "bad job or terrible job" and that discussed "inadequacies" in the plaintiff's job performance was defamatory per se); *Pittman v. Larson Distrib. Co.*, 724 P.2d 1379, 1387 (Colo. App. 1986)

7

(reversing the trial court's holding that the statement the plaintiffs were fired because they were not "doing as good a job" and "spent too much time in the office and on the telephone" was not defamatory per se); *see also Preeson v. Parkview Med. Ctr., Inc.*, No. 15-cv-02263-MSK-KMT, Docket No. 55 at 4, 9–10 (D. Colo. Sept. 23, 2016) (holding that statements such as the plaintiff was "not friendly," was "quick to complain," "not open to feedback," and did not have a "positive reputation" in the workplace were sufficient, at the pleading stage, to support the plaintiff's defamation per se claim).

Courts in other states have found that a defendant saying a plaintiff has been terminated with cause – without describing the conduct that gave rise to the termination and that would impute unfitness for a particular profession – is not defamatory per se. *See, e.g.*, *Skopp v. First Fed. Sav. of Wilmette*, 545 N.E.2d 356, 445 (Ill. App. Ct. 1989) (holding that the statement that a plaintiff has been terminated with cause is not defamatory per se because "a statement that an individual has been terminated 'for cause' conveys little more than the obvious information that the person did not leave his or her employment voluntarily"); *Terry v. Hubbell*, 167 A.2d 919, 923 (Conn. Super. Ct. 1960) ("Taken in their natural and ordinary meaning, the words 'discharged for cause' mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance which operated to produce that effect.") (internal quotations omitted); *see also No Witness, LLC v. Cumulus Media Partners, LLC*, 2007 WL 4139399, at *5 (N.D. Ga. Nov. 13, 2007) (noting that "the statement that 'Jones was fired for cause,' is not necessarily defamatory on its face" because "[t]hese words could imply that misconduct led to the termination of Jones, but this implication is not necessary from the face of the words alone") (applying Georgia

8

law); *Estepp v. Johnson Cnty. Newspapers, Inc.*, 578 S.W.3d 740, 744 (Ky. Ct. App. 2019) ("a mere statement of discharge from employment, whether it be termed 'terminated' 'removed' 'discharged for cause' or 'fired' even if untrue, is not *per se* defamatory as compared to stating that an employee made a voluntary decision to leave; these are distinctions without a difference").

Here, Mr. Shaver and Mr. Young do not allege that Mercer made statements similar to those made in *Meehan*, *Pittman*, or *Preeson*, where the defendants identified the conduct that gave rise to termination. *See Meehan,* 796 F. Supp. at 466; *Pittman*, 724 P.2d at 1387; *Preeson*, No. 15-cv-02263-MSK-KMT, Docket No. 55 at 4, 9–10. Rather, Mr. Shaver and Mr. Young merely allege that Mercer communicated to third parties that Mr. Shaver and Mr. Young were terminated "with cause." Docket No. 69 at 25, ¶ 74. As discussed previously, where the defendant does not describe the conduct that led to termination, there is no imputation that the plaintiff is unfit for a particular position. *See Hopkins*, 2017 WL 2380227, at *17 ("where the allegedly defamatory statement taken as a whole does not identify [plaintiff's] specific conduct giving rise to his termination, the Court cannot conclude that the statement, on its face, impeaches [plaintiff] in his trade or profession or otherwise imputes to him conduct derogatory to his character and standing as a business man and tending to prejudice him in his business") (internal quotation and citation omitted).

Mr. Shaver and Mr. Young argue that "cause," as defined in their employment agreements, means that Mercer's statements "conveyed the impression that Shaver and Young committed wrongdoing or misconduct that was incompatible with their

9

business, trade, profession or office, resulting in their terminations 'for cause.'" Docket No. 80 at 2, 3-4.

Mr. Shaver and Mr. Young do not explain why the Court should consider evidence beyond the pleadings. Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (citation omitted); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"). However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). When a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted). The Court exercises its discretion not to consider the employment agreements since Mr. Shaver and Mr. Young do not explain why the agreements are central to their defamation counterclaim.

Even if the Court were to consider the employment agreements in ruling on Mercer's 12(b)(6) motion, the agreements are not relevant to Mr. Shaver's and Mr.

Young's defamation counterclaim.  Mr. Shaver and Mr. Young do not allege that the employment agreements were published to third parties or that third parties would have been aware of the agreements.  See Docket No. 69 at 25-26.  Therefore, the agreements cannot be relied upon as additional context that show Mercer's statements were defamatory per se, as was the case in *Meehan*, *Pittman*, or *Preeson* where the defendant publicized the conduct that gave rise to the plaintiff's termination.  See *Meehan,* 796 F. Supp. at 466; *Pittman*, 724 P.2d at 1387; *Preeson*, No. 15-cv-02263-MSK-KMT, Docket No. 55 at 4, 9–10.

Accordingly, the Court will dismiss Mr. Shaver's and Mr. Young's fifth counterclaim for defamation.[3]

IV. **CONCLUSION**

Therefore, it is

**ORDERED** that plaintiff and counterclaim defendant Mercer Global Advisors, Inc.'s Motion to Dismiss [Docket No. 75] is **GRANTED**.  It is further

---

[3] In its reply, Mercer argues that Mr. Shaver and Mr. Young fail to state a plausible defamation claim pursuant to Fed. R. Civ. P. 8(a).  Docket No. 81 at 6–8.  However, Mercer fails to raise this argument in its motion to dismiss, Docket No. 75, and the Court will not consider it.  *Ulibarri v. City & Cnty. of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) ("Arguments raised for the first time in a reply may be disregarded.").

**ORDERED** that defendants and counterclaim plaintiffs Jeffrey Shaver and Joseph Young's fifth counterclaim for relief is **DISMISSED without prejudice**.[4]

DATED March 12, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] Mercer argues that Mr. Shaver's and Mr. Young's fifth counterclaim should be dismissed without leave to amend because they "already had an opportunity to amend their counterclaims and failed to add any additional facts . . . rendering any further amendment futile." Docket No. 75 at 13–14. Mr. Shaver and Mr. Young argue, if the Court grants Mercer's motion to dismiss, that they should be granted leave to amend. Docket No. 80 at 13–14. Mr. Shaver and Mr. Young, however, have not filed a motion to amend. "A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d). The Court finds that, at this time, Mercer has not shown that further amendment would be futile. If Mr. Shaver and Mr. Young seek to amend their counterclaim, they shall seek such relief in a separate motion in accordance with the local rules. Therefore, the Court will dismiss Mr. Shaver's and Mr. Young's fifth counterclaim without prejudice.

12